IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

REGINALD DUNAHUE                                                    PLAINTIFF
ADC #106911

v.                              No: 2:18-cv-00103 DPM-PSH

WENDY KELLEY, *et al.*                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to Chief United States District Judge D.P. Marshall Jr.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I.  Introduction

Plaintiff Reginald Dunahue filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 while incarcerated at the Arkansas Division of Correction's (ADC) East Arkansas Regional Unit (EARU).  Doc. No. 2.  Liberally construing Dunahue's complaint, the Court found that Dunahue stated Fourteenth Amendment due process

and equal protection claims, Eighth Amendment conditions-of-confinement claims, and First Amendment access-to-news and retaliation claims based on his placement in punitive isolation in January 2018 and the conditions he endured while there. *See* Doc. Nos. 8 & 25. Dunahue's other claims, including an access-to-courts claim and claims relating to a September 2017 attack and June 2018 incident, were dismissed as unrelated. *Id.* Defendants Georgette Broadway and Emmer Branch were dismissed, *id.*, and defendants Morieon Kelly, Latosha Davis, Kathey Baxter, Demarcus Lewis, Terence Akins, Erma Bell, Wallace McNary, and Justine Minor were subsequently dismissed on Dunahue's motion. *See* Doc. Nos. 52 & 57. Dunahue's equal protection, retaliation, and access-to-news claims, along with his due process claims against Kelley and Palmer, were dismissed for failure to exhaust administrative remedies. *See* Doc. No. 78. Dunahue's Eighth Amendment conditions-of confinement claims against Wendy Kelley, Marshall Reed, Jeremy Andrews, James Dycus, David Knott, and Stephanie Palmer (the "Defendants") and his due process claims against Reed, Andrews, Dycus, and Knott remain. *Id.*

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts filed by the Defendants (Doc. Nos. 161-163). Dunahue filed a response and a statement of disputed facts (Doc. Nos. 165-166). After a thorough review of the pleadings and supporting documentation, the Court ordered the Defendants to supplement the record with any relevant

evidence concerning when and for how long Dunahue was subject to restricted recreation time between January and July 2018. *See* Doc. No. 170. Dunahue filed a response to the Court's order (Doc. No. 171), and the Defendants filed supplemental evidence (Doc. No. 172).

The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and they are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. Discussion

### A. *Sovereign Immunity*

The Defendants correctly assert that Dunahue's monetary claims against them in their official capacities are barred by sovereign immunity. A suit against a state employee in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan*

*Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989).  Accordingly, the Defendants are entitled to summary judgment on Dunahue's official capacity claims for money damages.

Additionally, Dunahue's request for injunctive relief is moot because he has been moved to another prison unit.  *See* Doc. Nos. 108 & 169.  *See generally Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").

### B.    *Qualified Immunity*

The Defendants argue that they are entitled to qualified immunity with respect to Dunahue's individual capacity claims.  Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law and is appropriately resolved on summary judgment.  *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the

defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court will address Dunahue's specific claims individually as follows.

### 1.    Cell Conditions

Dunahue claims the conditions in punitive isolation at the EARU violated his Eighth Amendment rights. To prevail on an Eighth Amendment conditions of confinement claim, a prisoner must show (1) the alleged deprivation was, "objectively, sufficiently serious," and resulted "in the denial of the minimal civilized measure of life's necessities," and (2) prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1970).

Dunahue specifically alleges:

ADC, Jeremy C. Andrews, James Dycus, David Knott also who all are defendants on January 18, 2018 denied me, Reginald Dunahue due procedural process by forcing me back into Punitive Isolation at E.A.R.U. where defendants tolerate prison person personnel depriving inmates of eating spoons needed at breakfasts, lunch and dinner times. And Pun-Iso is where defendants tolerate various officers to deprive me of lunch, drinking cups, outside cell exercise, access to medical care and procedural due process. . . .

Doc. No. 7 at 7. Dunahue further alleges:

ADC, Wendy Kelley, Marshall Reed, Jeremy C. Andrews, James Dycus, David Knott, Morieon Kelly, Latosha Davis[1] and Stephanie Palmer forces me R. Dunahue to languish in unsafe and unsanitary isolation conditions at East Ark. Regional Unit in violation of the Eighth & Fourteenth Amendments of the U.S. Constitution. Complaints made about:

1) Isolation is rat & mice infested that run into cells,
2) Isolation shower stalls lack lighting and electrical wires hangs down into the uncleaned shower stalls,
3) Isolation lacks heating during cold seasons,
4) Isolation lacks real mental health care providers and help, and
5) Isolation lacks cell fire extinguishing water in the pipelines —— ADC, Kelley, Reed, Andrews, Dycus, Knott, Kelly, Davis and Palmer knows about and neglects and is cause of.

*Id.* at 7-8.[2]

<u>Eating Utensils and Drinking Cups</u>

Dunahue claims that the Defendants tolerated prison personnel denying him eating utensils and drinking cups. Doc. No. 7 at 7. In his deposition testimony, he explained that if he did not receive utensils, he would ask the officer passing out meals for a spoon, but the officer rarely returned with one. *Dunahue Deposition,* Doc. No. 161-1 at 8-9. Dunahue stated that he often had to eat with his hands no matter what type of food was served. *Id.* at 9-10. Dunahue's deposition testimony does not identify specific dates or times on which he did not receive utensils.

---

[1] Dunahue voluntarily dismissed his claims against Morieon Kelly and Latosha Davis. *See* Doc. Nos. 52 & 57.

[2] It is not clear whether these allegations concerning punitive isolation relate to Dunahue's placement there in January 2018 or to another stay in punitive isolation.

Dunahue simply claims that he did not receive utensils "the majority of the time" he was in isolation from January 2018 until his release from it in 2019.[3] *Id.* at 9. The record documents that Dunahue filed one grievance in November 2018, *after* his complaint was filed in this case, related to his utensil claim. In it, he complained about one incident in which he did not receive a utensil until after he had eaten.[4] Doc. No. 64 at 67-69.

For purposes of its findings, the Court presumes that Dunahue did not receive eating utensils for a majority of his meals. Despite this, the Court finds as a matter of law that Dunahue's claims in this regard fail to establish a constitutional violation. The Court recognizes that prisoners have a right to adequate nutrition, and the failure to provide it may constitute deliberate indifference that violates the Eighth Amendment. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). However, the

---

[3] Dunahue did not address this claim in his responses to the Defendants' motion for summary judgment. He was notified that if he responded to the Defendants' statement of facts, he must include "a separate, short and concise statement setting forth the disputed facts that he believes must be decided at trial" in accordance with Local Rule 56.1. *See* Doc. No. 164. Although Dunahue filed a statement of genuine disputes of material fact, he does not directly address the statement of facts provided by Defendants. Additionally, he only briefly refers to his claims regarding the conditions of his punitive isolation cell and merely restates the claims he made in his original complaint (Doc. No. 2). *See* Doc. No. 166 at 4-5. In his statement of disputed facts, Dunahue makes various legal arguments and claims that he was wrongfully denied appointment of counsel and needs assistance obtaining discovery to support his claim. The docket reflects that Dunahue never filed a motion to compel discovery even though the Court informed him of his ability to do so. *See* Doc. No. 144.

[4] The Defendants did not seek summary judgment on this claim on the basis that Dunahue failed to exhaust his administrative remedies. *See* Doc. No. 45.

periodic or even routine deprivation of an eating utensil, as claimed by Dunahue here, did not result in an excessive risk to inmate health or safety or constitute denial of the minimal civilized measure of life's necessities.  Dunahue does not assert that he was denied food, that he was unable to eat, or that he missed any meal as a result of not being provided utensils periodically.  He does not claim that he lost weight or suffered any injury resulting from the periodic lack of eating utensils.  He simply fails to establish that the periodic lack of utensils caused him any injury or that he was deprived of a basic human need, such as food, clothing, or shelter.

Additionally, when asked who was responsible for failing to provide him with utensils, Dunahue testified that an unnamed officer routinely failed to return to his cell with the utensils he requested; he did not claim that he made any requests to the Defendants or otherwise explain how they were involved. To state a cognizable claim against a defendant in a supervisory role, an inmate must allege that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action. *See, e.g., Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).  Dunahue has not

come forward with any evidence or even an allegation as to how the Defendants were personally involved in denying him eating utensils.[5]

In viewing the evidence in the light most favorable to Dunahue, the Court finds that he fails to create a genuine issue of material fact, and summary judgment is appropriate on this claim.

Unclean Cell

Dunahue generally claims that that his punitive isolation cell was unsanitary or unclean when he was placed there on January 18, 2018. Doc. No. 7 at 8, 10. In his deposition, he explained:

> Sanitation of the cells at the Brickeys Max were inadequate because in the way that staff would go about allowing the inmate to supposedly clean the cell. The officer responsible – or the officers responsible were Sergeant Palmer and two other ones. They wouldn't allow inmate complete usage of sanitation chemical and tools to adequately and fully clean cells in which I myself was housed in. The cell that I was brought back into on January the 18th was absolutely unsanitary. It had feces stuck to the walls, food was all stuck on the wall. There was just hair shavings and dust all over the place when I got into that cell. And I wrestled and stressed myself out for some days trying to persuade staff to give me what I needed to clean the cell.

*Dunahue Deposition,* Doc. No. 161-1 at 11. Dunahue testified he was in the punitive isolation cell for several days before he was provided cleaning supplies. *Id.* He

---

[5] While Dunahue also complains about being denied drinking cups in his complaint, he does not allege or offer proof that he was ever deprived of the ability to drink, or that he suffered any injury as a result. This claims fails to establish a genuine issue of material fact, and summary judgment should be granted as to it.

explained that inmates were not allowed to have possession of actual cleaning chemicals; rather, prison staff would spray chemicals on surfaces and allow the inmate to use a rag to clean those surfaces. *Id.* Dunahue claimed this is inadequate to clean the cell. *Id.*

Even if his punitive isolation cell was unclean when he was first placed there, Dunahue acknowledged he was there only "a few days" before staff members came to his cell with cleaning supplies. *Id.* at 38. The length of time a prisoner is exposed to unsanitary conditions is relevant to the Court's analysis as is the extent of the unclean conditions. *See Owens v. Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003). He also acknowledged he was provided a rag to wipe down surfaces that had been sprayed with cleaner; he does not have a constitutional right to use as much as cleaner as he wants or spray it himself. The undisputed material facts establish that Dunahue was exposed to unclean conditions for a short period of time, and that cleaning supplies were available to be sprayed in his cell. He fails to establish a constitutional violation, and summary judgment should be granted. *See Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (Eleven days in unsanitary cell did not establish Eighth Amendment violation.)

Additionally, Dunahue has only identified defendant Palmer as being involved in failing to provide cleaning supplies or adequately clean his cell. Accordingly, his claims against the other Defendants are also subject to dismissal

because he has not adequately described their involvement with respect to this allegation.  *See Mayorga v. Missouri, supra.*

Mice

Dunahue alleges his punitive isolation cell was infested with rats and mice. Doc. No. 7 at 8.  In his deposition, he testified:

> . . .  Mice are there – hell, mice are here.  You know, they're everywhere in the punitive isolation area, because the unit itself is a very nasty unit.  Sanitation workers don't really clean the unit up the way it ought to be, so, therefore, it creates a good atmosphere for mice and bugs to just roam.
>
> . . .
>
> . . . [Mice] run all day and all night.  I mean, they run around just like people do in society.  They run around all day and all night.  It's not like you see one once every month.  You see them all day and all night.  They . . . got all kind of nests and stuff in the base of the doors that they crawl inside of.  So they – I mean just – they're everywhere.

*Dunahue Deposition,* Doc. No. 161-1 at 11.

Defendants provided the declaration of Gaylon Lay, the Warden of the EARU, regarding this claim.  Doc. No. 161-5.  Lay stated that ADC contracted with Delta Pest Control, Inc. from September 1, 2014, to August 31, 2021, to provide preventive treatment for insects and rodents at EARU.  *Id.* at 1.  Lay provided a report evidencing the ADC's contract with Delta Pest Control, Inc.  *Id.* at 3.  This evidence demonstrates that the ADC took steps to provide pest control services at the EARU during the relevant time period, and it is inconsistent with a finding of deliberate

indifference.   The Court also notes that Dunahue does not claim any injury or damage related to this claim, and that he has not described how any individual defendant was responsible for the mice infestation he alleges.   *See Mayorga v. Missouri, supra.*   Summary judgment should be granted in favor of the Defendants on this claim.

### Lighting/Electrical Wires in Shower Stalls

Dunahue alleges that that the shower stalls in punitive isolation lacked lighting and had electrical wires hanging from the ceiling.   Doc. No. 7 at 8.   Defendants submit the declaration of Jeremy C. Andrews, Warden of the EARU.[6]   In the affidavit, dated November 26, 2018, Andrews refers to attached photographs of the ceilings of the shower stalls in Iso. #3.   In those photographs, no loose electrical wires are exposed.   *See Andrews Declaration,* Doc. No. 161-4, at 3-6.   Andrews does not identify when the attached photographs were taken.   In addition, Andrews avers that "there have been no maintenance requests related to loose-hanging electrical wires in the shower stalls in Isolation 3 at the EARU."   *Id.* at 1.

Dunahue testified that Andrews fixed the electrical wiring issue *after* he filed a motion for injunctive relief.   *Dunahue Deposition*, Doc. No. 161-1 at 14.   He referred to two grievances he submitted regarding maintenance issues including

---

[6] Andrews' declaration was previously filed at Doc. No. 39-1 in response to a motion for injunctive relief filed by Dunahue.

lighting, electrical wires in the showers, and the cell fire suppression system: EAM18-01728, submitted on July 9, 2018, and EAM18-02248, submitted on September 4, 2018 (*see* Doc. No. 41 at 8-13). Specifically, Dunahue complains in part in the first grievance that the electrical wiring to an Iso #3 shower stall light fixture is exposed. In response to this grievance, Warden Andrews responded that lights had been ordered. Doc. No. 41 at 9. In the second grievance, Dunahue complains in part that electrical wires were "still" hanging into Iso #3 shower stalls. In response to the second grievance, Major Knott replied "Maintenance request for this issue has been done and turned in." *Id.* at 12.

Neither of these grievances clearly relate to Dunahue's punitive isolation sentence that began in January 2018. Dunahue has not offered evidence of when the electrical and lighting issues began. His grievances are dated seven and nine months after his January 2018 isolation sentence began, and after this lawsuit was filed. The photographs from Andrews' affidavit are not dated. They do, however, document that any exposed electrical wires in the stalls were repaired at some point.

Viewing the evidence in the light most favorable to Dunahue, the Court will presume that the electrical and lighting issues existed for a significant amount of time before they were repaired. And if there were exposed wires that were live, they certainly could pose a danger to inmates using the shower stalls. However, Dunahue offers no evidence to support his allegation that the wires were live or that he

suffered any injury as a result of exposed wiring. [7]  For this reason, the Defendants are entitled to judgment as a matter of law.

### Heating During Cold Seasons

In his amended complaint, Dunahue generally alleges there was inadequate heating during cold months in his punitive isolation cell.  Doc. No. 7 at 8.  In response to the Defendants' motion for summary judgment, Dunahue provided two affidavits from inmates stating that the punitive isolation cells were cold.  *See* Doc. No. 165 at 12-14.

Dunahue's allegations regarding cold temperatures fail to describe a viable constitutional claim.  The Eighth Amendment guarantees prisoners the right to adequate shelter and protection from *extreme* cold, and courts examine allegations of the severity of the cold and the length of time a prisoner is exposed to it.  *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir. 1997).  *See e.g.*, *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (plaintiff alleged he was exposed to cold temperatures for approximately three months and it was so cold that ice was forming in his toilet);

---

[7] "Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (citing *Carey v. Piphus*, 435 U.S. 247, 253-55 (1978)); *see also Johnson v. State of Mo.*, 142 F.3d 1087, 1088 (8th Cir. 1998) ("'To establish standing, a party must, at a minimum, have suffered an 'injury-in-fact,' fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision.'") (quoting *Brouhard v. Lee*, 125 F.3d 656, 661 (8th Cir. 1997)).

*Dixon v. Godinez*, 114 F.3d at 644 (plaintiff testified "that ice persistently formed on the walls of the cells suggest[ed] that temperatures in the cell block were literally freezing, during the day as well as at night, and that this condition continued unchanged for several winters"); *Bennett v. Chitwood*, 519 Fed. Appx. 569, 574 (11th Cir. 2013) (no objectively serious deprivation was demonstrated where the "case [was] not one in which ice formed inside the cell"); *Diggs v. Godinez*, 1997 WL 308847, at *6 (N.D. Ill. June 3, 1997) (plaintiff asserted "that ice often formed on the inside of [the plaintiff's] own cell, and that [the plaintiff] lacked extra blankets or a space heater" for one year); *Dillingham v. Schofield*, 2011 WL 3664470, at *8 (E.D. Tenn. Aug. 19, 2011) (plaintiff alleged that the temperature outdoors was below zero and that ice formed in the cell for a period of three days, which caused the skin on the plaintiff's fingers to crack and bleed).

Neither Dunahue nor the inmates who provided affidavits describe how cold the temperatures were or how long they were exposed to extreme cold or below freezing temperatures. Accordingly, Dunahue does not state a claim under the Eighth Amendment based on the cold temperatures in punitive isolation.

Mental Health Care

Dunahue claims that punitive isolation "lacks real mental health care providers and help." Doc. No. 7 at 8. In his deposition, he explained:

See, they have mental health counselors. They walk throughout the isolation. They kind of like, you know, just pass by the cell doors. And

they will falsify that they had some kind of verbal contact with the particular inmate housed in the isolation.  So in all actuality these sham mental health counselors were falsifying records, because I wasn't really having true contact with them.

. . .

. . . They would record like inmate sleep, or inmate standing, or inmate talking, inmate seems to be well, when, in all actuality they never really took time out to speak with the inmates, introduce themselves or ask any questions.  They just walked through and walked by, and that's it.

*Dunahue Deposition,* Doc. No. 161-1 at 10.  Dunahue acknowledged that he did not sue any of these mental health counselors, and he did not explain how any named defendant was responsible for his mental treatment in punitive isolation, or how he was injured as a result of the mental health treatment he received.  Additionally, Dunahue did not address this claim in his response to the Defendants' summary judgment.  Because Dunahue has provided no evidence to support this claim and has not even described the involvement of any defendant, it is subject to dismissal.

<u>Water in Fire Sprinkler Pipelines</u>

Dunahue also alleges that the fire sprinklers lacked water in the punitive isolation cells.  Doc. No. 7 at 8.  In his deposition testimony, Dunahue explained that he believed Warden Andrews sometimes turned off the water because inmates broke the fire sprinklers.  *Dunahue Deposition,* Doc. No. 161-1 at 11-12.  He also alleged that inmates sometimes set fires in their cells, and he believed the fire sprinklers

were not working because smoke filled the cells without activating the fire sprinklers. *Id.*

With their motion for summary judgment, Defendants submit the Declaration of Jeremy Andrews, Doc. No. 161-3. Andrews states that in response to a grievance filed by Dunahue regarding inactivated fires sprinklers, he informed Dunahue that the fire suppression system had been checked, was in compliance, and is routinely checked monthly by fire and safety. *Id.* at 2. He states that he found no evidence to substantiate Dunahue's claim. *Id.*

Dunahue's deposition testimony reveals that he merely believed that the water had been turned off to the fire sprinklers, and he did not know it had been and did not suffer any injury as a result of inoperable fire sprinklers. Dunahue has not come forward with evidence to support his allegations regarding the fire sprinklers in punitive isolation. As such, he has failed to rebut the evidence offered by Defendants, and there is no issue of material fact regarding working fire sprinklers in punitive isolation.

<u>Conclusion re Cell Conditions Claims</u>

For the reasons just described, the Court finds that Dunahue fails to create a genuine issue of material fact with respect to his cell conditions claims. Dunahue also lacks standing with respect to these claims because he has claimed no specific injury or harm as a result of the conditions he alleges. Defendants are therefore

entitled to qualified immunity on Dunahue's Eighth Amendment cell conditions claims and should be granted summary judgment.

## 2.    Lack of Exercise

Dunahue claims that Defendants did not allow him to exercise outside while he was housed in punitive isolation in January 2018.  Doc. No. 7 at 7.  He alleges:

> ADC, Wendy Kelley, Marshall Reed, Jeremy Andrews, David Knott & James Dycus denies me, Reginald Dunahue my right to obtain one hour of outside exercise, five days a week w/ the purpose of harassing me and persecuting me for seeking redress of various constitutional rights infringements by them.  Kelley, Reed, Andrews, Dycus & Knott commands officers . . . to keep me shackled, tethered and handcuffed while i'm locked inside the new steel outside isolation inmate exercise cages where i've fell down onto the concrete ground trying to walk around, incompacitated.  Kelley, Reed, Andrews, Dycus & Knott have denied me outdoor exercise for one year now, in violation of my Eighth & fourteenth Amendment Const. Rights also.

*Id.* at 7-9.  Dunahue further alleges that Andrews ordered that he be kept shackled and handcuffed during recreation time after a June 13, 2018 incident.  *Id.* at 12 & 14.  Claims concerning the June 13, 2018 incident were previously dismissed from this case as unrelated.[8]  *See* Doc. Nos. 8 & 25.

Dunahue filed this case on July 13, 2018.  Because he alleged that he had been denied outdoor exercise for one year, the Court construed his claim that he was bound and shackled during outdoor recreation as part of his January 2018 punitive

---

[8] Dunahue's claims regarding the June 13, 2018 incident were allowed to proceed in a separate lawsuit:  *Dunahue v. Andrews,* Case No. 2:19-cv-00126-KGB-PSH.

isolation claims.   And the documentation submitted in support of Defendants'
motion indicates that Dunahue was sentenced to restrictive recreation time in June
of 2018 after he was charged with a disciplinary.[9]  *See* Doc. No. 161-3.  Dunahue
also referred to that incident in his deposition testimony and did not mention any
other restrictions on exercise in connection with his time in punitive isolation during
January 2018.  *See Dunahue Deposition,* Doc. No. 161-1 at 16.

The Court ordered Defendants to supplement the record with evidence of
when Dunahue was placed on restricted recreation status.  In response to the Court's
order, EARU Warden Lay provided a declaration stating that he could not identify
any information indicating that Dunahue was placed on restricted recreation status
before June 13, 2018.  *See Declaration of Gaylon Lay*, Doc. No. 172.  He attached
to his declaration an inmate precaution dated June 13, 2018, indicating that Dunahue
was placed on restricted recreation status due to "threats to stab staff and subsequent

---

[9] Dunahue previously submitted five grievances with a motion for preliminary
injunction that address his restricted exercise status since an incident occurring on June
13, 2018.  *See* Doc. No. 26 at 13-27.  Those grievances are:  EAM18-1605 complaining
of restraints during yard call after an incident occurring on June 13, 2018; EAM18-1729
submitted on July 10, 2018, stating that he had been denied exercise for past 30 days;
EAM18-1793 stating that white prisoners were not subjected to excessive force and cruel
and unusual punishment during recreation time as he was after being accused of making a
threat in a June 12, 2018 phone call; EAM18-1872 submitted on July 24, 2018,
complaining that he had been restrained during exercise for past 40 days; and EAM 18-
1870 submitted on July 25, 2018, claiming that he had been restrained during exercise for
60 days.

finding of a shank within cell and history within the last year of attempting to stab staff prior to implementation of RR status." *Id.* at 3.

Dunahue filed a brief in response to the Court's order requiring supplementation. Doc. No. 171. He disputes that he threatened Andrews in June 2018 and indicates that he has been on restricted recreation status at times since then, but he does not claim that he was placed on restricted recreation status prior to June 2018. The evidence in this case shows that Dunahue was not bound and shackled in this way until June 2018. Accordingly, Dunahue's claims that he was handcuffed and shackled during outdoor recreation status are not properly before the Court because claims relating to the June 13, 2018 incident were previously dismissed from this case.

### 3.    Due Process

Dunahue's due process claims against Defendants Knott, Dycus, Reed, and Andrews are based on the following allegations:[10]

> ADC Jeremy Andrews, James Dycus, David Knott also who all are defendants on January 18, 2018 denied me, Reginald Dunahue due procedural process by forcing me back into Punitive Isolation at E.A.R.U. where defendants tolerate Prison Personnel depriving inmates of eating spoons needed at breakfasts, lunch and dinner times. And Pun-Iso is where defendants tolerate various officers to deprive me of lunch, drinking cups, outside cell exercise, access to medical care and

---

[10] Dunahue also claimed that former defendant Justine Minor denied him due process in his disciplinary hearing; however, he has since dismissed her as a defendant. Doc. Nos. 52 & 57. His due process claims against Palmer were dismissed for failure to exhaust administrative remedies. *See* Doc. No. 78.

procedural due process.  Plus, where security is absent, and aid is denied.  Defendants on January 8, 2018 had me, Reginald Dunahue placed in administrative segregation cell block #8 . . .   No rule infractions were levied on me on Jan. 18, 2018; . . .

. . .

Defendants Jeremy Andrews, Marshall Reed, Wendy Kelley and David Knott conspired to retaliate, harass and create a violent and dangerous image of me – R. Dunahue on or about January 26, 2018.  Some ADC inmate on or about January 26, 2018 sent defendant Wendy Kelley a letter that contained threats.. Whoever the inmate is that made the threats signed his name on the letter.  Wendy Kelley got the letter and sent copies of it to defendants Andrews and Knott.  Defendants Wendy Kelley, Jeremy Andrews, Marshall Reed, David Knott and Wallace McNary knew and knows that I, R. Dunahue didn't write the letter in question but they all decided it gave them the good chance to lie on me, charge me and extend my punitive isolation bid because I continue to sue them and challenge their abuse of authority.  All defendants decided Captain McNary would charge me of sending threats to Wendy Kelley – so I, Reginald Dunahue was falsely charged.  . . .

Doc. No. 7 at 7 & 15.

Dunahue's deposition testimony helps to clarify why he believed his due process rights had been violated in January 2018.  He explained:

I had been released from punitive isolation by security and moved to cell block Number 8, which is restrictive housing [on January 8, 2018].  On January 18th I was moved back to punitive isolation without being afforded a disciplinary hearing for any type of charges I had been given, for like misbehavior, you know, issues.  I had not done anything that was in violation of ADC policy and procedure, okay?

Doc. No. 161-1, *Deposition Testimony of Reginald Dunahue* ("*Dunahue Deposition*"), at 3.  Dunahue's argument is that once he was removed from punitive isolation, ADC policy (Administrative Directive 16-20) dictated that his remaining

punitive sentence be commuted to restrictions and that he could not be placed back into punitive isolation unless he received a new disciplinary sentence. *Id.* at 3-8. Dunahue testified that he did not believe his due process rights had been violated in connection to any specific disciplinary proceeding. *Id.* at 8. Defendants contend that Dunahue misconstrues ADC policy, and that his placement in a different cell for a few days did not equate to being released from punitive isolation or wipe out any remaining unserved punitive isolation sentences.[11]

The parties' dispute regarding the ADC's punitive isolation policy is immaterial to this case. Even if the Defendants violated prison policy, that would not give rise to a due process claim because inmates do not have a constitutionally protected right to require prison officials to comply with internal rules or procedures. *See Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). *See also Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

---

[11] Defendants maintain that Dunahue had already been sentenced to over 1000 days of punitive isolation time on prior disciplinary charges when he was temporarily moved out of punitive isolation in January 2018. Defendants did not produce evidence of Dunahue's punitive isolation sentences, and Dunahue testified that he did not know how much punitive time he had remaining in January 2018. *Dunahue Deposition* at 3. Administrative Directive 16-20 provides that if an inmate is removed from punitive segregation prior to completion of a punitive sentence, the inmate will be placed on punitive restrictions until the end of that punitive sentence. Doc. No. 161-2 at 8. The policy does not specifically address the issue raised by Dunahue – whether an inmate with multiple disciplinary sentences can be moved in and out of punitive isolation.

To sustain a due process challenge to his confinement in punitive isolation, Dunahue must identify the deprivation of a liberty interest. *Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A prisoner has no liberty interest in having certain procedures followed in the disciplinary process; rather, the liberty interest arises from the "nature of the prisoner's confinement." *Phillips*, 320 F.3d at 847. "In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could 'expect to experience as an ordinary incident of prison life.'" *Phillips*, 320 F.3d at 847 (quoting *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)).

Generally, an inmate has no liberty interest in avoiding segregated confinement, as long as the conditions do not amount to an "atypical and significant" hardship that would give rise to due process protection as set forth in *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). The Eighth Circuit Court of Appeals has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*." *Portly-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). As discussed above, Dunahue has not shown that he was subjected to unusually harsh conditions while in punitive isolation in January 2018. Accordingly, Defendants are entitled to qualified immunity with respect to Dunahue's individual capacity due process claims.

## V.  Conclusion

For the reasons stated herein, the undersigned finds that Dunahue has failed to establish that his claims constitute constitutional violations committed by the Defendants or that he was injured as a result of any violations.  The Court recommends that Defendants' motion for summary judgment (Doc. No. 161) be granted and Dunahue's claims be dismissed with prejudice.

DATED this 7th day of March, 2022.

_____

UNITED STATES MAGISTRATE JUDGE